**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>v.<br>ALEXANDER O'NEIL HAILEY,<br>*Defendant.* | Case No. 5:25-cr-40070-AWM |

## MEMORANDUM AND ORDER

Defendant Alexander O'Neil Hailey pleaded guilty to two counts of possessing cocaine with intent to distribute it. He has filed five objections to the Presentence Investigation Report ("PSIR").[1] At the September 15, 2026, sentencing hearing, the Court heard testimony and argument on the objections and took them under advisement,[2] and the parties then submitted supplemental briefs on whether Hailey's objections disqualify him from the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).[3] As the Court advised the parties at the hearing, it now rules on the objections in writing so that the parties may address the resulting offense level and advisory range when sentencing resumes.

The Court sustains Objection No. 1 in part and otherwise overrules it, and it will not use the reported meeting in ¶ 26 to calculate the guideline range or select Hailey's sentence. Hailey's objections do not disqualify him from the two-level reduction under § 3E1.1(a). The Court sustains Objection No. 2 because the government has not shown

[1] Doc. 29; Doc. 30 ¶ 1; Doc. 34 ¶¶ 156–202. Citations to the PSIR (Doc. 34) refer to its numbered paragraphs; other record citations refer to the page numbers assigned by CM/ECF.
[2] Doc. 38.
[3] Docs. 39, 40.

that Carl Brown's possession of a firearm is attributable to Hailey. The Court overrules Objection No. 3: Hailey has not shown that his primary function was a low-level trafficking function or that he was substantially less culpable than the average participant. The Court overrules Objection No. 4, and it overrules Objection No. 5 on the present record. On the present record, if the government moves for the additional one-level reduction under § 3E1.1(b) and the Court grants the motion, the total offense level is 19 and the advisory imprisonment range is 30 to 37 months.

## I. BACKGROUND

### A. The offense conduct.

In his plea agreement, Hailey "admits to knowingly committing the offense" and stipulates to a factual basis for both counts. That factual basis states that on September 9, 2024 (Count 1), a confidential source ("CS") was used "to purchase 6.5 ounces of cocaine from the defendant, Alexander HAILEY," and that on March 26, 2025 (Count 3), Carl Brown took a bag from him and then sold cocaine to the CS.[4] Brown is a relative of Hailey's whom agents were investigating for cocaine distribution.[5] The government agreed to dismiss Count 2, and the parties agreed that its underlying conduct would be considered in calculating the offense level at sentencing.[6] Dismissal of Count 2 does not remove that transaction from the guideline calculation. The September 17, 2024, sale charged in Count 2 occurred eight days after the Count 1 sale, with the same buyer and at the same location, and was part of the same course of conduct as the offenses of conviction; Hailey does not contend otherwise. The Court therefore considers it as

---

[4] Doc. 1 at 1–3; Doc. 30 ¶¶ 1–2.
[5] Doc. 34 ¶¶ 8, 10; Doc. 39 at 3.
[6] Doc. 30 ¶¶ 4, 5(a).

relevant conduct in calculating his guideline range, including the drug quantity and his role. U.S.S.G. § 1B1.3(a)(2), (d).

The PSIR describes three transactions, which the Court refers to by the counts that charged them. In the "Count 1 sale," on September 9, 2024, the CS arranged to buy 6.5 ounces of cocaine from David Holmes, Hailey's cousin, who sent Hailey to deliver it instead; Hailey delivered the cocaine and took $5,000.[7] In the "Count 2 sale," on September 17, 2024, Hailey delivered about five ounces of cocaine to the CS at the same location; agents had given the CS $3,800 for the purchase.[8] In the "Count 3 sale," on March 26, 2025, the CS arranged to buy nine ounces of cocaine from Brown; agents gave the CS an extra $1,000 in case Brown brought a firearm to sell. During the deal, Brown spoke with Hailey by phone. Hailey then arrived at a Topeka residence, exchanged an item with an unknown man, and handed Brown a plastic grocery bag. Brown sold the cocaine to the CS in the CS's vehicle, and the CS reported that Brown took a 10mm handgun from his own vehicle and showed it to the CS.[9] The ounce figures are the quantities the sales were arranged for; the DEA laboratory measured the cocaine from the three sales at 165.3, 129, and 221.2 grams, a total of 515.5 grams.[10]

The PSIR also describes later events: the CS's report of a meeting with Hailey at a Topeka residence the weekend before April 1, 2025 (¶ 26); the CS's unsuccessful attempt on April 22, 2025, to buy cocaine and a handgun from Brown, followed that evening by Brown's vehicle, Hailey's vehicle, and a food truck traveling together to a sports bar, where numerous people approached the truck (¶¶ 27–29); a May 1, 2025, traffic stop of

[7] Doc. 34 ¶¶ 11–15.
[8] Doc. 34 ¶¶ 16–19.
[9] Doc. 30 ¶ 2; Doc. 34 ¶¶ 20–24.
[10] Doc. 34 ¶¶ 15, 19, 25, 38.

Brown's vehicle, which had left Brown's residence in tandem with Hailey's, in which two firearms Brown claimed as his were recovered (¶ 30); Hailey's questioning by the Kansas Highway Patrol on May 28, 2025, when he denied being a cocaine distributor and officers took his phones (¶ 31); and messages recovered from one of those phones (¶¶ 32–37).[11]

**B. The objections.**

Objection No. 1 challenges portions of the PSIR's offense-conduct narrative in ¶¶ 10, 11, 16, and 26 through 37. As filed, it disputes suggestions that Hailey distributed cocaine with Brown, planned the Count 2 sale, or was known to agents as a cocaine distributor before September 9, 2024, and asks the Court to strike ¶ 11's statement that agents arranged a purchase "from Hailey"; it also challenges the PSIR's interpretations of the phone messages, denies the meeting reported in ¶ 26, and disputes the relevance of ¶¶ 27 through 31. In objecting to ¶ 11, Hailey asserts that he "was not a drug dealer."[12]

The other objections concern the guideline calculation. Objection No. 2 challenges the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1). Objection No. 3 seeks a four-level mitigating-role adjustment under § 3B1.2(a); Hailey argues that his role was limited to delivering packages for relatives "while choosing to remain ignorant of their contents." Objection No. 4 seeks a further two-level reduction under § 2D1.1(b)(16), which is available only to a defendant who receives the four-level mitigating-role adjustment and meets additional requirements. Objection No. 5 seeks the two-level "safety-valve" reduction under § 2D1.1(b)(17); the principal dispute is whether Hailey has truthfully disclosed to the government all he knows about the

---

[11] Doc. 34 ¶¶ 26–37.
[12] Doc. 34 ¶¶ 156–169.

offenses.[13] Probation and the government oppose each objection.[14] The PSIR recommends a three-level reduction for acceptance of responsibility, a total offense level of 21, and an advisory range of 37 to 46 months.[15]

The PSIR applies the 2025 Guidelines Manual. The Court applies the November 1, 2026, Manual, which will be in effect when sentencing resumes, and which renumbers the reductions sought in Objections Nos. 4 and 5 as § 2D1.1(b)(16) and (b)(17); this Order uses the 2026 numbering throughout. See Part III.G.

**C. The September 15 hearing and supplemental briefing.**

At the hearing, the parties stipulated that the government's case agent, DEA Special Agent Brenden McDowell, would testify that the PSIR's account of the offense conduct is consistent with the DEA's investigative reports.[16] When the Court questioned whether Objection No. 1, as written, contested the Count 3 conduct Hailey admitted, defense counsel responded that Hailey does not deny handing Brown the bag containing the cocaine Brown sold to the CS, and clarified that the objection disputes only involvement with Brown in cocaine distribution beyond that delivery.

The Court identified three disputed matters requiring further evidence: whether the CS met with Hailey as ¶ 26 reports; what agents observed during the April 22 food-truck episode; and what the phone messages meant. Defense counsel stated his understanding that the parties were submitting the objections on the PSIR, but acknowledged that allowing additional testimony was within the Court's discretion. The

[13] Doc. 34 ¶¶ 174–202. Under the 2025 Manual, the PSIR cites these two reductions as § 2D1.1(b)(17) and (b)(18). Doc. 34 ¶¶ 42, 197, 200.
[14] Doc. 34 ¶¶ 170–173, 183–188, 195–196, 198–199, 201–202; Doc. 37 at 5–10.
[15] Doc. 34 ¶¶ 41, 50–53, 116.
[16] Doc. 40 at 4.

Court permitted the government to call Agent McDowell on those three matters, and the defense cross-examined him. Neither party asked to supplement the record further.

The Court then gave Hailey leave to file a supplemental brief on whether his objections disqualify him from the reduction under § 3E1.1(a), and gave the government leave to respond.[17] Hailey's supplemental brief again admits the offense conduct, including that he possessed the cocaine charged in Count 3 with intent to deliver it to Brown, and states that the objections to ¶¶ 10 and 26 were meant to deny only regular distribution with Brown and a meeting to discuss drug distribution.[18] The government reaffirms its obligations under the plea agreement, including its agreement to recommend the two-level reduction, and leaves the question to the Court.[19]

## II. LEGAL STANDARDS

For any disputed portion of the PSIR, the Court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). The Court may accept any undisputed portion of the PSIR as a finding of fact. Fed. R. Crim. P. 32(i)(3)(A). If the defendant properly objects to a fact, the government must prove it by a preponderance of the evidence. *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014); *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).[20] The government bears the burden of proving facts

[17] Doc. 38.
[18] Doc. 39 at 3–4.
[19] Doc. 40 at 5–8.
[20] The government relies on Fifth Circuit decisions holding that "[t]he defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." Doc. 34 ¶ 172 (quoting *United States v. Valdez*, 453 F.3d 252, 262 (5th Cir. 2006) (quotation omitted)). That is not the rule in this circuit. Once a defendant properly objects to a fact in the PSIR, the government must prove it. *Harrison*, 743 F.3d at 763; *McDonald*, 43 F.4th at 1095.

supporting an enhancement, and the defendant bears the burden of proving facts supporting a reduction. *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990).

## III. ANALYSIS

### A. Objection No. 1.

#### 1. Characterizations of Hailey's conduct (¶¶ 10, 11, and 16).

As narrowed by counsel at the hearing and in the supplemental brief, Hailey objects to ¶ 10 insofar as it suggests that he regularly distributed cocaine with Brown. He objects to ¶ 16 insofar as it suggests that he planned the Count 2 sale. He does not dispute the conduct those paragraphs describe: he admits that the bag Brown took from him before the Count 3 sale contained cocaine he intended to deliver to Brown, and he does not deny making the Count 2 delivery. The Court does not read ¶ 10 as stating that Hailey regularly distributed cocaine with Brown or as attributing to him the large-scale distribution for which agents were investigating Brown, and it does not read ¶ 16 as stating that he planned the Count 2 sale.[21]

As to ¶ 11, Hailey asks the Court to strike the statement that agents arranged for the CS to buy cocaine "from Hailey," arguing that the CS arranged the purchase with Holmes and that agents neither knew of Hailey nor expected him to distribute cocaine that day. Read as a whole, ¶ 11 is consistent with the first part of that argument: it explains that the CS arranged the deal through Holmes, who said his cousin would appear in his place, and ¶ 14 adds that Holmes "instead sent Hailey." The Court reads "from Hailey" to identify the person who ultimately delivered the cocaine, not to state

[21] Doc. 1 at 2; Doc. 30 ¶¶ 2, 5(a); Doc. 34 ¶¶ 10, 16, 156, 159; Doc. 39 at 3.

that agents arranged the transaction with him or knew of him or his distribution activity before September 9, 2024. So read, ¶ 11 is accurate, and the Court declines to strike it.[22] The objections to ¶¶ 10, 11, and 16 are overruled.

**2. The reported meeting (¶ 26).**

Paragraph 26 reports the CS's statement that he or she met with Hailey at a Topeka address the weekend before April 1, 2025. Hailey's objection states that the meeting did not happen; his supplemental brief clarifies that he denies any meeting to discuss drug distribution.[23] Agent McDowell testified that agents did not surveil the reported meeting; that the CS called him, he believed the next morning, and reported having been with Hailey and Brown the previous night, socializing and drinking; and that the CS reported no drug-related activity. Agent McDowell did not know how long anyone was present or how much anyone had been drinking. He also testified that the CS had provided corroborated information over several months and had not been found to fabricate. The testimony thus describes a reported social encounter at which the CS identified no drug-related activity, and the government's written arguments do not cite ¶ 26 in support of any guideline determination.[24] The Court need not decide whether the encounter took place. It will not consider ¶ 26 in calculating the guideline range, deciding acceptance of responsibility, or selecting the sentence, Fed. R. Crim. P. 32(i)(3)(B), and it makes no finding that the CS's report was inaccurate.

[22] Doc. 30 ¶ 2; Doc. 34 ¶¶ 11, 14, 157–158.
[23] Doc. 34 ¶¶ 26, 161; Doc. 39 at 4.
[24] See Doc. 34 ¶¶ 171, 183–187, 195, 201; Doc. 37 at 5–10.

**3. Later events (¶¶ 27 through 31).**

Hailey disputes the relevance of ¶¶ 27 through 31, not their accuracy.[25] The government relies on ¶¶ 27 through 29 to show that Hailey could have foreseen Brown's possession of a firearm; Probation relies on the food-truck episode in opposing a role adjustment; ¶ 30 reports the later recovery from Brown's vehicle of two firearms, including a 10mm handgun found where the CS had told agents it would be;[26] and ¶ 31 explains how agents obtained the phones discussed in ¶¶ 32 through 37.[27] The paragraphs are relevant, and the objection is overruled. Because their accuracy is undisputed, the Court accepts the factual descriptions in them, without adopting any disputed inference from those events, Fed. R. Crim. P. 32(i)(3)(A); whether those events establish firearm foreseeability or a more substantial role is addressed in Parts III.C and III.D.

**4. Phone messages (¶¶ 32 through 37).**

Hailey does not dispute the text of the messages in ¶¶ 33, 34, 36, and 37 or that agents recovered them from his phone; he challenges the PSIR's explanations of what they mean and whom they address.[28] Agent McDowell testified that, based on his training and experience, he understood the single-digit numbers in the ¶ 36 messages, sent by a contact identified as "Deuce," to refer to ounces of a controlled substance, but acknowledged on cross-examination that the exchange itself did not identify them as

---

[25] Doc. 34 ¶ 160.
[26] Doc. 34 ¶¶ 30, 184, 187, 196.
[27] Doc. 34 ¶¶ 31, 160. Hailey told law enforcement in May 2025, as recorded in ¶ 31, that he was not a cocaine distributor. He made that statement before he was charged; he later pleaded guilty and admitted the offense conduct under oath; and neither the PSIR nor the government relies on the statement to oppose the two-level reduction under § 3E1.1(a). See Doc. 1; Doc. 29 ¶¶ 5, 18, 25; Doc. 34 ¶¶ 41, 50–51; Doc. 40 at 5–8. The Court therefore does not treat that statement as a reason to deny the two-level reduction under § 3E1.1(a).
[28] Doc. 34 ¶¶ 32–37, 162–169.

drug quantities. As to ¶ 37, the Court stated at the hearing its understanding, from the parties' correspondence, that the government no longer contended that "addy" meant Adderall rather than an address; defense counsel confirmed that understanding, and the government did not dispute it. The government offered no testimony or other evidence that "press" referred to a pill press.

To the extent the disputed readings assert facts, the government bears the burden of proving them, and it has not carried it; to the extent they are inferences from the undisputed text, the Court declines to draw them. The Court does not adopt (1) the explanatory notes agents inserted in the messages quoted in ¶¶ 33 and 37 identifying references to a "firearm," "one ounce of unknown substance," "Adderall," and a "pill press"; (2) the PSIR's description of the one-way messages in ¶¶ 33, 34, 36(I), and 37 as "conversations"—¶ 36(II), by contrast, includes a reply from Hailey—or its statement in ¶ 32 that the messages involve "drugs and/or a firearm"; (3) Agent McDowell's reading of the numbers in the ¶ 36 messages as ounces of a controlled substance; or (4) the inference that the ¶ 33 messages, two of which address their recipient as "Dad" and all of which were sent from a number Hailey says belongs to his nephew, were intended for Hailey.[29] The objections are sustained to that extent.

None of the disputed readings affects the guideline calculation. The government does not rely on the messages for the firearm enhancement or for the firearm-related safety-valve criterion,[30] and the Court does not rely on the ¶ 36 messages in deciding the role adjustment. See Part III.D.2. Otherwise, the Court will not consider the disputed descriptions and inferences in determining the sentence. Fed. R. Crim. P. 32(i)(3)(B).

---

[29] Doc. 34 ¶¶ 32–34, 36–37, 163–164, 168–169.
[30] See Doc. 34 ¶¶ 183–187, 201; Doc. 37 at 5–10.

The objections are otherwise overruled: the text of the messages remains in the PSIR, as does ¶ 35's report that certain messages were not viewable and that agents believed the number belonged to Brown.[31]

**B. Hailey qualifies for the two-level reduction under § 3E1.1(a).**

A defendant who "clearly demonstrates acceptance of responsibility for his offense" receives a two-level reduction, and he bears the burden of showing it. U.S.S.G. § 3E1.1(a); *United States v. Melot*, 732 F.3d 1234, 1244 (10th Cir. 2013). A guilty plea before trial, combined with truthfully admitting the offense conduct and not falsely denying relevant conduct, is "significant evidence" of acceptance, though it may be outweighed by inconsistent conduct. U.S.S.G. § 3E1.1 cmt. n.3. A defendant who "falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility," but an unsuccessful challenge is not necessarily a false denial or a frivolous contest. *Id*. cmt. n.1(A).[32] Statements made through counsel count. See *United States v. Olvera-Rivera*, 413 F. App'x 71, 77 (10th Cir. 2011) (unpublished).

Hailey pleaded guilty before trial, admitted under oath the conduct comprising both counts, and repeats those admissions in his supplemental brief.[33] That is significant evidence of acceptance. See *United States v. Cruz Camacho*, 137 F.3d 1220, 1226 (10th Cir. 1998) ("[W]hen a defendant admits the facts necessary to support his

---

[31] Paragraph 35 reports that certain messages were not viewable and that agents believed the number belonged to Brown. Hailey does not dispute that agents held that belief; he disputes whether they had sufficient grounds for it. That challenge does not dispute the accuracy of the paragraph. See *McDonald*, 43 F.4th at 1096–97 (holding that a defendant does not properly dispute facts in the PSIR when "he has only objected to the credibility or reliability of a source or information").

[32] Both parties suggest the reduction should be withheld only when a defendant disputes "conclusive evidence." Doc. 39 at 3–4; Doc. 40 at 8. The commentary does not require the disputed evidence to be conclusive. The Court applies the false-denial and frivolous-contest standard stated above.

[33] Doc. 29 ¶¶ 5, 20, 25; Doc. 34 ¶ 41; Doc. 39 at 3.

conviction, he should generally be awarded a reduction."). The disputes resolved in Part III.A do not weigh against it. Hailey has not falsely denied relevant conduct that the Court has determined to be true: he does not deny the three deliveries; his challenges to the phone messages contest the PSIR's inferences, not conduct the Court has found; and the Court has not determined that the meeting reported in ¶ 26 occurred, let alone that it was relevant conduct. See U.S.S.G. § 3E1.1 cmt. n.1(A). The objection to ¶ 10, as written, did contest the Count 3 conduct Hailey admitted, but counsel acknowledged at the hearing that Hailey handed Brown the cocaine, accepted responsibility for the overbroad wording as his own, and limited the objection to a broader distribution relationship, and the supplemental brief confirms that position.[34]

Two statements made through counsel are harder to reconcile with the plea. The objection to ¶ 11 asserts that Hailey "was not a drug dealer," and Objection No. 3 describes him as delivering packages for relatives "while choosing to remain ignorant of their contents."[35] Read literally, the first contradicts his admission that he knowingly sold cocaine to the CS, and the second questions whether he knew the packages contained a controlled substance—an element of the offenses he admitted. Counsel has not withdrawn either statement. But the objection to ¶ 11 itself acknowledges that Hailey delivered a package to the CS and collected payment; neither counsel's argument at the hearing nor the supplemental brief claimed that Hailey did not know what he was delivering;[36] and the supplemental brief repeats his admission that he possessed the Count 3 cocaine with intent to deliver it to Brown.[37] Reading the objections together

---

[34] Doc. 39 at 3.
[35] Doc. 34 ¶¶ 158, 189.
[36] Doc. 39 at 1–4.
[37] Doc. 39 at 3.

with those later submissions, the Court finds that both phrases were arguments minimizing his role rather than a retreat from his plea admissions, and it credits Hailey's sworn admissions that he knowingly committed both offenses[38] over unsworn assertions made through counsel.[39] For the same reason, in deciding Objection No. 3, the Court does not accept counsel's assertion that Hailey chose to remain ignorant of the contents of the packages he delivered in the Count 1 and Count 3 sales.

Hailey's sworn and repeated admissions provide significant evidence of acceptance, and the conflicting statements in counsel's filings, read in context, do not outweigh it. The Court finds that Hailey has clearly demonstrated acceptance of responsibility and qualifies for the two-level reduction under § 3E1.1(a).

Under the plea agreement, the government will move at sentencing for the additional one-level reduction under § 3E1.1(b) if Hailey's offense level before any acceptance reduction is 16 or greater and the Court finds that he qualifies for the two-level reduction.[40] Both conditions are presently met, and the Court has made no finding that would release the government from its obligation. The Court will rule on the motion at sentencing; the calculation in Part III.G includes the additional level subject to that ruling. The finding under § 3E1.1(a) does not resolve whether Hailey has satisfied the safety-valve disclosure requirement, addressed in Part III.F.

### C. Objection No. 2: The firearm enhancement does not apply.

Section 2D1.1(b)(1) adds two levels "[i]f a dangerous weapon (including a firearm) was possessed." The government must first prove possession; only then must

---

[38] Doc. 29 ¶¶ 5, 18, 25; Doc. 30 ¶ 1.
[39] Doc. 34 ¶ 158; Doc. 29 ¶¶ 5, 18, 25; Doc. 30 ¶¶ 1–2; Doc. 39 at 3.
[40] Doc. 30 ¶ 5(c); see Doc. 34 ¶¶ 41, 49; Doc. 40 at 6–7.

the defendant show that a connection between the weapon and the offense is "clearly improbable." *United States v. Martinez*, 82 F.4th 994, 1001 (10th Cir. 2023); U.S.S.G. § 2D1.1 cmt. n.11(A). The government has not shown that Hailey personally possessed a firearm. Brown's possession may be attributed to Hailey only if it was within the scope of the criminal activity they jointly undertook, in furtherance of that activity, and reasonably foreseeable in connection with it. U.S.S.G. § 1B1.3(a)(1)(B). Each element is "independent and necessary," and determining the scope of the jointly undertaken activity requires "particularized findings tying the defendant to the relevant conduct." *United States v. Patton*, 927 F.3d 1087, 1094 (10th Cir. 2019) (quotations omitted). Application of the enhancement turns on the "specific facts and circumstances taken together, not generic conclusions," *United States v. Slater*, 971 F.2d 626, 633 (10th Cir. 1992), and "participation in an illegal drug transaction alone, while probative, is not determinative," *United States v. Moreira*, 333 F. App'x 366, 371 (10th Cir. 2009) (unpublished). The Court may, but need not, infer foreseeability when "another participant knowingly possessed the weapon while [they] committed the offense." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (quotation omitted).

Hailey argues that nothing shows he agreed to Brown's cocaine sale to the CS.[41] The record shows otherwise: Hailey spoke with Brown by phone during the deal, brought the cocaine to the place of the sale, handed it to Brown, and pleaded guilty to Count 3, which charges him with possessing that cocaine with intent to distribute it and expressly references 18 U.S.C. § 2.[42] The jointly undertaken activity included the Count 3 sale. Hailey does not dispute that Brown had the 10mm handgun during that sale and

---

[41] Doc. 34 ¶ 180.
[42] Doc. 1 at 2–3; Doc. 30 ¶¶ 1–2; Doc. 34 ¶¶ 5, 22–23; Doc. 39 at 3.

showed it to the CS.[43] The question is whether Brown's possession was reasonably foreseeable to Hailey, and the government has not shown that it was.

The government need not show that Hailey actually knew Brown was armed; it is enough that Brown's possession was reasonably foreseeable to him. See *McFarlane*, 933 F.2d at 899 (permitting attribution of a codefendant's weapon "if the possession of weapons was known to the defendant or reasonably foreseeable by him"). That turns on whether, on all the circumstances, Hailey reasonably should have foreseen that Brown would possess a firearm in connection with the sale. See U.S.S.G. § 1B1.3 cmt. n.3(D). The circumstances here do not show that. Nothing in the record shows that Hailey saw the gun, was present when Brown displayed it, or had learned from earlier dealings that Brown carried firearms during drug transactions.

The PSIR's statement that Brown "was known to possess" the 10mm describes what the CS knew, and the extra $1,000 agents gave the CS reflects the agents' expectation; neither shows what Hailey knew or had reason to know.[44] The record supports a family relationship between Hailey and Brown,[45] but not its closeness or what Hailey knew about Brown's practices. The PSIR reports that Brown has been charged with possessing a firearm as a felon,[46] but the government did not substantiate its assertions at the hearing about Brown's prior firearm convictions and prison terms or show that Hailey knew of them; the prosecutor's statements are not evidence. Cf. *United States v. Wilson*, 17 F.4th 994, 1006 (10th Cir. 2021). The Eighth Circuit decision on

---

[43] Doc. 34 ¶¶ 24, 177; see Fed. R. Crim. P. 32(i)(3)(A).
[44] Doc. 34 ¶¶ 20, 24. At the hearing, the government argued that the extra funds are one more link in the circumstantial chain showing foreseeability. The funds show what agents anticipated about Brown; they do not establish what Hailey knew or could foresee.
[45] See Doc. 39 at 3.
[46] Doc. 34 ¶ 8.

which the government relies asks whether the defendant knew or should have known, "based on specific past experiences with the co-conspirator," that the co-conspirator possessed a gun and used it during drug deals;[47] the record would not satisfy that test either.

The April and May 2025 events in ¶¶ 27 through 30 all occurred after the Count 3 sale. Later events can bear on what a defendant knew or had reason to expect earlier, and the Court has considered them for that purpose. They place Hailey with Brown afterward, but they do not show that Hailey knew, or had reason to know, that Brown possessed firearms. The record does not show that Hailey took part in or knew of Brown's April agreement to sell the CS a handgun, Agent McDowell's testimony about the food-truck episode does not mention a firearm, and ¶ 30 reflects the CS's knowledge of where Brown kept a firearm, not Hailey's; the PSIR does not place Hailey in that vehicle, and Brown claimed both firearms as his.[48]

The Court declines to draw the permissive *McFarlane* inference. There, the defendant rode in the car with the gun on the floor between the front seats, and the codefendant came along "as a show of force." *McFarlane*, 933 F.2d at 898–99. Here, the record does not show when Brown displayed the firearm or that Hailey was present when he did so; the CS met Brown more than an hour before Hailey arrived, and Brown completed the sale in the CS's vehicle.[49] The Tenth Circuit decisions on which the government relies for an inference of foreseeability likewise involved facts absent here. See *Moreira*, 333 F. App'x at 371–72 (defendant sold drugs for a large operation and went to the stash house where guns and drugs were kept); *United States v. Goddard*,

[47] Doc. 34 ¶ 185 (quoting *United States v. Lopez*, 384 F.3d 937, 944 (8th Cir. 2004)).
[48] Doc. 34 ¶¶ 27–30.
[49] Doc. 34 ¶¶ 21, 23–24.

929 F.2d 546, 548 (10th Cir. 1991) (co-conspirator had brandished the gun at the defendant).[50] Taken together, the family relationship, the phone call during the sale, the delivery to Brown, and the later association show that Hailey worked with Brown in the Count 3 sale and kept company with him afterward. Considering those circumstances together, the Court is not persuaded by a preponderance of the evidence that Brown's possession of a firearm was reasonably foreseeable to Hailey; the general association between drug dealing and guns does not substitute for evidence of what this defendant had reason to foresee.

Because the government has not shown that Brown's possession was reasonably foreseeable to Hailey, the Court need not decide whether it was in furtherance of the Count 3 sale. Objection No. 2 is sustained.

**D. Objection No. 3: Hailey does not qualify for a mitigating-role adjustment.**

**1. Governing framework.**

Since November 2025, § 2D1.1 has included a special instruction for applying the mitigating-role adjustment in drug cases. An adjustment under § 3B1.2 "is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function." U.S.S.G. § 2D1.1(e)(2)(B). Four levels are generally warranted when that function "was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or

---

[50] The government also relies on decisions from other circuits stating that a co-conspirator's use of a firearm will ordinarily be foreseeable because firearms are tools of the drug trade. Doc. 34 ¶ 185 (citing, e.g., *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1993)). Those decisions do not displace the individualized inquiry the Tenth Circuit requires. See *Moreira*, 333 F. App'x at 371; *Slater*, 971 F.2d at 633–34. *Slater* observed that "[i]n the garden-variety drug case, we could perhaps assume joint actors are aware of the tools of their trade," *id.* at 633, but that assumption, like the *McFarlane* inference, is permissive, and the Court declines to draw it on this record.

messages, or acting as a lookout," and two levels when it was "another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit." *Id.* § 2D1.1(e)(2)(B)(i)–(ii). The examples are "illustrative rather than a definitive list," U.S.S.G. App. C, amend. 833 (Nov. 1, 2025) (Reason for Amendment), and a defendant's possession of more than user-level quantities does not by itself disqualify him under § 2D1.1(e)(2)(B)(ii). *United States v. Vizcaino Vizcaino*, No. 26-1187, --- F.4th ----, 2026 WL 3082932, at *4–5 (1st Cir. Oct. 15, 2026). The special instruction operates "[i]n addition to the circumstances identified in § 3B1.2," so § 3B1.2 remains independently available. See U.S.S.G. § 2D1.1(e)(2)(A)–(B).

The special instruction does not require comparison with the average participant. Hailey need not show that he was substantially less culpable than the average participant, U.S.S.G. § 2D1.1(e)(2)(B), and the government's argument that he was not, in which Probation concurred, therefore bears only on whether § 3B1.2 applies directly—a question the Court addresses in Part III.D.3—not on whether he qualifies under the special instruction.[51]

Under either route—the special instruction or direct application of § 3B1.2—the Court considers the totality of the circumstances to determine whether an adjustment is warranted and, if so, its extent. U.S.S.G. § 3B1.2 cmt. n.3(C); U.S.S.G. § 2D1.1(e)(2)(B). That assessment is informed by the § 3B1.2 factors: the defendant's understanding of the scope and structure of the criminal activity; his participation in planning or organizing it; his decision-making authority; the nature and extent of his participation,

---

[51] See Doc. 34 ¶¶ 195–196.

including "the responsibility and discretion the defendant had" in performing his acts; and the degree to which he stood to benefit. U.S.S.G. § 3B1.2 cmt. n.3(C); see *United States v. Amaya*, No. CR 25-0879 JB, 2026 WL 892862, at *17–18 (D.N.M. Mar. 31, 2026) (amended opinion). Those factors are weighed together, not tallied. See *United States v. Nkome*, 987 F.3d 1262, 1280–82 (10th Cir. 2021) (affirming where the district court explained that the determination was "not a scoreboard kind of thing").

Hailey must establish entitlement to the adjustment by a preponderance of the evidence. *Nkome*, 987 F.3d at 1277; see *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004). The special instruction makes an adjustment "generally warranted," not mandatory. U.S.S.G. § 2D1.1(e)(2)(B); see *United States v. Jackson*, No. 2:25cr237-MHT, --- F. Supp. 3d ----, 2026 WL 2818028, at *4 (M.D. Ala. Sept. 11, 2026) (amended opinion) (explaining that the four-level adjustment is "generally warranted" and that the guideline "does not say it is always warranted").

Under the special instruction, the inquiry concerns Hailey's predominant function across his relevant conduct, which here consists of the three sales described in Part I.A. The Court weighs the evidence as a whole; the inquiry does not require that every transaction fit an illustrative example, and it is not resolved by counting transactions. See *Jackson*, 2026 WL 2818028, at *4 (the special instruction "does not require that the low-level role be the only role, but rather that it be the primary one"). The Court has identified no Tenth Circuit decision interpreting the primary-function

inquiry under § 2D1.1(e)(2)(B).[52] Precedent applying the former framework remains instructive on the burden of proof and on the bar against speculative findings, but it does not define the functional inquiry the instruction added.

The function Hailey claims is courier work. The Guidelines do not define "courier." *United States v. Maciel*, 789 F. Supp. 3d 934, 937 (S.D. Cal. 2025). In its ordinary sense, the term describes a person who transports drugs for someone else. See *Drug courier*, *Black's Law Dictionary* (12th ed. 2024) ("[s]omebody who has been employed to transport illegal drugs"); *Maciel*, 789 F. Supp. 3d at 937–38 (treating as a courier a person "whose only function is to transport drugs"). Both a courier and a person with greater responsibility for the drugs may physically deliver them. The Court must therefore determine whether transporting cocaine for others was Hailey's predominant function, considering any additional responsibilities the evidence establishes.

**2. The special instruction.**

The quantities Hailey delivered do not, by themselves, establish greater responsibility or discretion. The government opposes any adjustment because Hailey supplied what it describes as "distribution quantities" of cocaine—515.5 grams across the three transactions—to the CS and to Brown.[53] Neither § 2D1.1(e)(2)(B) nor § 3B1.2 establishes a quantity threshold that determines a defendant's trafficking function. See

---

[52] Courts elsewhere have read "courier" in § 2D1.1(e)(2)(B)(i) differently. Compare *United States v. Maciel*, 789 F. Supp. 3d 934, 935–38 (S.D. Cal. 2025) (applying the amendment by variance before its effective date and treating as a courier a person "whose only function is to transport drugs"), with *United States v. Rivas Contreras*, No. 25-CR-4185-TWR, 2026 WL 412482, at *2–3 (S.D. Cal. Feb. 13, 2026) (construing "courier" by reference to the neighboring examples of errands, messages, and lookout duties). The Court need not choose between those readings. It treats Hailey's Count 1 delivery as courier work and does not exclude him because he carried distribution quantities; its ruling rests on whether courier work or another low-level function predominated across his relevant conduct.

[53] Doc. 37 at 9; see also Doc. 34 ¶ 195. The 515.5-gram total is reported in Doc. 34 ¶ 38.

U.S.S.G. § 2D1.1(e)(2)(B); *id.* § 3B1.2 cmt. n.3(C). A courier may carry drugs intended for further distribution, and when courier work was the defendant's primary function, a four-level adjustment is generally warranted under § 2D1.1(e)(2)(B)(i). See *Maciel*, 789 F. Supp. 3d at 937–38 (a person whose only function is to transport drugs is a courier "regardless of the amount of drugs they are transporting"); cf. *Vizcaino Vizcaino*, 2026 WL 3082932, at *5 (possession of more than user-level quantities does not by itself disqualify a defendant under § 2D1.1(e)(2)(B)(ii)). Here, the Count 1 sale, in which Hailey delivered the cocaine at Holmes's direction, was arranged for six and a half ounces, a quantity between the five ounces arranged for the Count 2 sale and the nine ounces arranged for the Count 3 sale.[54] The Court therefore does not infer greater authority or discretion from the amounts Hailey delivered.

The remaining circumstances likewise do not establish that Hailey independently arranged or controlled the cocaine supply. The government contends that the Count 3 sequence and the food-truck episode show by a preponderance of the evidence that Hailey was "a source of cocaine for Brown."[55] They do not. That Hailey handed Brown the cocaine shows that he delivered it, not that he independently arranged or controlled the supply, and the food-truck episode places Hailey near the truck with Brown but does not show what, if anything, Hailey did there. The Court does not find that Hailey owned the cocaine, arranged access to it, or controlled any sale; on this record, such findings

---

[54] Doc. 34 ¶¶ 11, 14, 16, 20.
[55] Doc. 37 at 5–7; see also *id.* at 9 ("Hailey supplied distribution quantities of controlled substances to CS and to Brown.").

would rest on speculation. See *United States v. Delgado-Lopez*, 974 F.3d 1188, 1193–94 (10th Cir. 2020).[56]

The government's failure to establish independent control of the supply does not itself establish Hailey's entitlement to mitigation. The Court must assess his claimed primary function from the affirmative evidence as a whole.

*a. The three sales*. Hailey's principal contention is that he was a courier who made deliveries for relatives.[57] The evidence from each sale informs whether transporting drugs for others was Hailey's predominant function.

The Count 1 evidence establishes courier work. Holmes arranged the sale, specified the quantity, and sent Hailey in his place, and Hailey delivered the cocaine and collected the $5,000 payment.[58] Those facts establish that Hailey acted at Holmes's direction. The record does not show how Hailey obtained the cocaine or whether he was paid. Those gaps would matter if the question were on whose behalf he delivered it, but Holmes's direction answers that question.

The Count 2 evidence does not establish whether Hailey again acted at Holmes's direction. In that sale, eight days after the first, Hailey delivered five ounces to the same buyer at the same location and collected the payment; agents had given the CS $3,800

---

[56] The Court has not considered, in deciding the role adjustment, that Hailey has not made a proffer to the government; that omission bears on the safety valve, see Part III.F, not on his role. See *Delgado-Lopez*, 974 F.3d at 1194. Nor does the Court rely on the food-truck episode or on the ¶ 36 messages, whose disputed readings the Court has declined to adopt, see Parts III.A.3–4. On the food-truck episode, Hailey's vehicle traveled with Brown's vehicle and the food truck to a sports bar, where a large number of people approached the truck and left without being served food. Doc. 34 ¶¶ 28–29. Agent McDowell testified that Hailey's and Brown's vehicles were parked next to the truck, that he did not believe Hailey went inside it, and that agents did not specifically observe hand-to-hand transactions. That evidence places Hailey with Brown near the truck; it does not show what Hailey did there or what he knew of any activity at the truck.

[57] Doc. 34 ¶¶ 189–190; Doc. 36 at 5.

[58] Doc. 34 ¶¶ 11, 13–14.

for the purchase.[59] No one other than Hailey is identified in that sale; defense counsel's assertion, in Hailey's written objection to ¶ 16 of the PSIR, that discovery shows the CS made arrangements with Hailey's cousin is not evidence.[60] See *United States v. Naranjo-Aguilar*, 154 F.4th 1251, 1255 (10th Cir. 2025) (a proffer "is not evidence, *ipso facto*" (quoting *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997))); *United States v. Esquivel*, 214 F. App'x 803, 806 (10th Cir. 2007) (unpublished) (unsupported assertions by the defendant and by defense counsel were insufficient to establish a minor role). The similarities to the first sale support Hailey's contention. But the shared features—the same buyer, location, and vehicle, which was registered to Hailey and his mother[61]—would be expected whether Holmes sent Hailey again or the CS, having met Hailey eight days earlier, bought from him directly. They therefore do little to show which occurred, and the record contains no other evidence of who arranged the sale.[62]

*Amaya* illustrates why the connection between transactions matters. A court may infer that a less fully documented transaction mirrored documented ones, see *Amaya*, 2026 WL 892862, at *16 n.5, but the inference is permitted, not required, and its strength depends on what connects the transactions. In *Amaya*, the record identified the participant through whom the less fully documented sale was made; here, it identifies no one other than Hailey. Weighing the similarities for what they show, the Court is not persuaded that it is more likely than not that Hailey acted at Holmes's direction in the second sale. See *Esquivel*, 214 F. App'x at 806 (under the former

---

[59] Doc. 34 ¶¶ 16–18; see also *id.* ¶ 171.
[60] Doc. 34 ¶ 159.
[61] Doc. 34 ¶¶ 12, 17.
[62] The government's response describes the second transaction as completed "the same way," with Hailey delivering the cocaine and accepting the money. Doc. 34 ¶ 171. That description supports continuity in Hailey's observed conduct but does not identify who arranged the second transaction or whose cocaine he delivered.

framework, circumstances offered to show a limited role were "ambiguous at best" and the district court did not err in finding them insufficient).

The Count 3 evidence establishes Brown's control of the customer transaction but leaves unresolved whether Hailey obtained the cocaine on Brown's behalf. Brown arranged the sale, negotiated the price, and conducted the exchange with the CS.[63] After meeting the CS, Brown spoke with Hailey by phone and then said that "everything else was supposed to have been in place." About an hour later, Hailey arrived, exchanged an item with an unknown man, and handed Brown the cocaine.[64] Brown's control of the customer side of the sale weighs in Hailey's favor. But the record does not show whose cocaine it was, who arranged Hailey's exchange with the unknown man, or whether Brown sent Hailey to retrieve it. Brown's remark is as consistent with Hailey's having been sent to retrieve cocaine for Brown as with Hailey's having provided the cocaine to Brown on his own account. Brown's explanation to the CS that the price had risen because he "had to split up eighteen ounces into two separate instances" shows that Brown set the terms of the sale to the CS, but it does not show where the cocaine came from or whether Hailey obtained it for Brown or on his own account. Nothing else in the record tips the balance.

Hailey admitted knowingly possessing cocaine with intent to distribute it in the Count 1 and Count 3 sales, which defeats his objection's claim of willful ignorance as to those sales,[65] but the record does not show what more he understood of the activity. The family relationships are established, but Hailey's assertions that he received no

[63] Doc. 34 ¶¶ 20–23.
[64] *Id.*; Doc. 39 at 3.
[65] Doc. 30 ¶¶ 1–2; Doc. 39 at 3.

compensation and acted because of those relationships lack evidentiary support,[66] and the Court does not infer profit or greater authority from those omissions.

*b. Courier work.* Considered together, the delivery pattern and the evidence of others' direction do not persuade the Court that courier work was Hailey's predominant function. Delivery recurs in all three sales, but courier work, as defined above, means delivering on someone else's behalf. The record establishes that for the first sale; for the second, the evidence of direction is insufficient, and for the third, it is evenly balanced. Hailey therefore has not established that his primary function was plainly among the lowest level of trafficking functions under § 2D1.1(e)(2)(B)(i).

*c. Another low-level function.* Even if Hailey has not established that courier work was his primary function, he may qualify for a two-level adjustment under subsection (B)(ii) by establishing another low-level primary function. The provision's example—user-level distribution for little compensation or a nonfinancial motive—is illustrative, not a prerequisite. *Vizcaino Vizcaino*, 2026 WL 3082932, at *5. His failure to establish that he acted without compensation out of family loyalty therefore does not resolve his eligibility. The Court must assess his actual responsibilities and discretion, together with the other § 3B1.2 factors, across the three sales. U.S.S.G. § 3B1.2 cmt. n.3(C).

Hailey contends that the Commission adopted the special instruction to encourage broader use of § 3B1.2 in drug cases, including for couriers about whom little else is known.[67] The Court applies the instruction with that purpose in view. It does not

---

[66] Doc. 34 ¶ 11; Doc. 39 at 3. On compensation, see Doc. 34 ¶¶ 189, 197; Doc. 36 at 5. On family motive, see Doc. 34 ¶¶ 189, 197(A); Doc. 36 at 1–2, 6.

[67] Doc. 34 ¶ 191; see U.S.S.G. App. C, amend. 833 (Reason for Amendment) (special instruction adopted "to encourage broader use of §3B1.2 in these cases"). Counsel made the same point at the September 15 hearing.

deny the adjustment because the record is silent about the broader enterprise or because Hailey cannot be compared with other participants; the instruction permits an adjustment without either. But the rationale Hailey invokes addresses a defendant whose own function is shown—a courier carrying drugs for someone else, or a participant whose limited responsibilities are otherwise established—and whose place in a larger organization is unknown. That is not the gap here. For two of the three sales, the record does not show whether Hailey was carrying cocaine for anyone else or what authority he exercised in obtaining it—questions that bear on both the four-level and the two-level routes.

The evidence supporting Hailey's claimed low-level function consists principally of the delivery pattern and others' arrangement of the first and third sales. The record documents three sales over more than six months. In each, Hailey's observed conduct was delivering cocaine and, in the first two, collecting payment; the record does not show him negotiating a price or recruiting a buyer. Holmes arranged the Count 1 sale and specified its quantity, and Brown arranged the Count 3 sale and negotiated its price. Hailey was also employed as a commercial truck driver during that period, see Doc. 34 ¶ 110, although that employment does not establish what compensation he expected or what responsibilities he exercised in these transactions. Taken together, those circumstances support a low-level characterization and provide the strongest evidence that Hailey's role was limited.

That evidence does not, however, resolve the authority and discretion Hailey exercised in obtaining the cocaine for the second and third sales. In the second sale, Hailey conducted the transaction with no one else identified; in the third, the record does not show whether he obtained the cocaine at Brown's direction or on his own

account. That Hailey obtained the cocaine before delivering it does not itself show greater responsibility; couriers and errand-runners may pick drugs up from someone else. For those two sales, the record does not show who chose the source of the cocaine, who arranged its acquisition, what terms Hailey accepted or set, or what he stood to gain.[68] Those facts bear directly on the § 3B1.2 factors of decision-making authority, the nature and extent of his participation, and expected benefit, U.S.S.G. § 3B1.2 cmt. n.3(C)(iii)–(v). The Court does not infer from those gaps that Hailey's responsibilities in those sales were greater; it weighs them together with the favorable evidence.

Considering the evidence as a whole—the delivery pattern, Holmes's direction of the Count 1 delivery, Brown's control of the Count 3 customer transaction, and the unresolved circumstances of Hailey's remaining responsibilities—the Court is not persuaded that a low-level function predominated. Denying the adjustment on that ground does not require Hailey to disprove a more substantial role, and the Court does not find that he held one. The denial reflects the ordinary operation of the preponderance standard: a proponent who does not persuade the Court that a necessary fact is more likely true than not has not carried his burden. See *Nkome*, 987 F.3d at 1277; *Salazar-Samaniega*, 361 F.3d at 1277; cf. *United States v. Sanchez*, 725 F.3d 1243, 1251 (10th Cir. 2013) (upholding denial under the former framework where the

[68] The record on these questions is narrow: it contains no communications showing how the second sale was arranged or what Brown and Hailey discussed before the third, and no account of Hailey's responsibility for acquiring the cocaine in the second and third sales beyond the transaction descriptions and plea admissions discussed above. See Doc. 34 ¶¶ 11–23, 41.

defendant's precise role remained unclear). Hailey does not qualify for an adjustment under § 2D1.1(e)(2)(B).[69]

**3. Direct application of § 3B1.2.**

Nor does Hailey qualify for an adjustment under § 3B1.2 itself. That inquiry asks whether he was "substantially less culpable than the average participant in the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(A), comparing him with the participants actually involved rather than with a hypothetical average participant. *United States v. Berryhill*, 140 F.4th 1287, 1296, 1303 (10th Cir. 2025). A defendant is not entitled to the adjustment "simply because he is the least culpable among several participants in a jointly undertaken criminal enterprise." *Nkome*, 987 F.3d at 1277 (quoting *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994)); see also *id.* at 1281.

The record identifies three criminal participants: Holmes, who arranged the Count 1 sale and sent Hailey; Brown, who arranged and negotiated the Count 3 sale and conducted the exchange with the CS; and Hailey, who made all three deliveries and conducted two of the exchanges himself. An unidentified man exchanged an item with Hailey before the Count 3 sale, but the record does not show what he did or whether he was criminally responsible, and the CS, who acted for law enforcement, is not a participant. See U.S.S.G. §§ 3B1.1 cmt. n.1, 3B1.2 cmt. n.1.

---

[69] *Amaya* and *Jackson*, on which a defendant in Hailey's position might rely, each rested on affirmative evidence establishing the limits of the defendant's role—in *Amaya*, that he had to confirm pricing with his source, could not complete a transaction until another participant arrived with the drugs, and neither supplied the drugs nor retained the proceeds, 2026 WL 892862, at *15; in *Jackson*, that someone else gave him the contraband and offered him $4,000 to deliver it, and that others in the operation gave him the delivery role, 2026 WL 2818028, at *1, *4 (granting two levels rather than four because he was also "significantly involved in the planning of the offense"). Hailey has established such direction for the Count 1 sale, but he has not persuaded the Court that those limits characterized his primary function across the relevant conduct.

Hailey was less culpable than Holmes and Brown in the sales they arranged: Holmes arranged the Count 1 sale, specified its quantity, and sent Hailey in his place; Brown arranged the Count 3 sale, negotiated its price, and conducted the exchange with the CS. Those differences in planning and authority weigh in Hailey's favor, and differences of that kind can be substantial.

The Court weighs those differences against Hailey's participation across the relevant conduct. The differences are confined to two of the three sales; Hailey made all three deliveries and conducted two of the exchanges himself, which weighs the other way on the nature and extent of his participation; and in the Count 2 sale the record identifies no participant other than Hailey, so it shows nothing about his culpability relative to anyone in that sale. On the remaining factors—each man's understanding of the activity and what he stood to gain—the record permits no comparison. See *Naranjo-Aguilar*, 154 F.4th at 1257–58 (paucity of information about the other participants' payments, understanding, and planning made comparison of their culpability difficult); see also *United States v. Acosta*, 841 F. Supp. 3d 31, 42–43 (D.P.R. 2026) (where the record contained no evidence of the participants' planning, decision-making authority, or expected benefit, those factors could not distinguish the defendant from the average participant). The Court does not treat those unknowns as weighing against Hailey.

On this record, the proved differences show that Hailey was less involved in arranging two sales, not that he was substantially less culpable than the average participant across the relevant conduct. See *Nkome*, 987 F.3d at 1277. He does not qualify for a two-, three-, or four-level adjustment.

Objection No. 3 is overruled.

**E. Objection No. 4: Hailey does not qualify for the additional two-level reduction under § 2D1.1(b)(16).**

Section 2D1.1(b)(16) applies only "[i]f the defendant receives the 4-level reduction in §3B1.2(a)." Hailey does not. The defense's showing on the additional requirements is also deficient. Factor (A) requires that the defendant was motivated by a family relationship "and was otherwise unlikely to commit such an offense." Hailey's objection addresses only the first clause, and his sentencing memorandum adds that he worked as a commercial truck driver and was therefore not presumptively reliant on drug proceeds.[70] Lawful employment does not by itself show that a defendant who delivered cocaine in three sales over more than six months was otherwise unlikely to commit the offense. And the assertion under factor (B) that Hailey received no compensation is unsupported by any evidence.[71] Objection No. 4 is overruled.

**F. Objection No. 5: Hailey has not established eligibility for the two-level reduction based on the safety-valve criteria.**

Section 2D1.1(b)(17) provides a two-level reduction if the defendant meets the criteria in § 5C1.2(a)(1) through (5), and Hailey bears the burden on each. *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996); *United States v. Patron-Montano*, 223 F.3d 1184, 1189 (10th Cir. 2000). He satisfies the criteria in § 5C1.2(a)(1), (3), and (4).[72] The firearm criterion in § 5C1.2(a)(2) looks to the defendant's own conduct, *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1186, 1188 (10th Cir. 2004), and nothing in the record suggests that Hailey used violence or credible threats of violence, possessed a

---

[70] Doc. 34 ¶ 197(A); Doc. 36 at 1, 6.
[71] See Doc. 34 ¶ 197(B); Doc. 36 at 5.
[72] See Doc. 34 ¶¶ 67, 200–201.

firearm or other dangerous weapon, or induced another participant to do so in connection with the offenses.

The dispositive question is § 5C1.2(a)(5), which requires that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," including information about others' involvement. U.S.S.G. § 5C1.2(a)(5); *United States v. Acosta-Olivas*, 71 F.3d 375, 378–79 (10th Cir. 1995). A formal proffer is not required; the showing may be made through "proffer documents, stipulated facts, or, in all likelihood, testimony." *United States v. De La Torre*, 599 F.3d 1198, 1206–07 (10th Cir. 2010) (quotation omitted). And the fact that the defendant has no useful information to add, or that the government already knows it, "shall not preclude" a finding of compliance. U.S.S.G. § 5C1.2(a)(5). That proviso allows a defendant who has made a full and truthful disclosure to qualify even if it tells the government nothing new; it does not excuse the disclosure itself.

Counsel acknowledged at the hearing that Hailey has not made a proffer, and argued instead that the government already knows everything Hailey could tell it.[73] Hailey's plea admissions describe his own conduct and the roles of Holmes and Brown in the Count 1 and Count 3 sales.[74] But Hailey has not shown that those admissions contain all he knows about the offenses and related conduct, including others' involvement—for example, who arranged the Count 2 sale and how he came to have the cocaine he handed Brown in the Count 3 sale—and he has identified no other disclosure.

---

[73] Doc. 34 ¶ 200(5).
[74] Doc. 30 ¶ 2; Doc. 34 ¶ 11.

The Court does not assume that Hailey has undisclosed information on those subjects; the point is that he has not shown that he has disclosed whatever he knows. He therefore has not established the complete disclosure § 5C1.2(a)(5) requires.

Disclosures are "generally" timely "only if they occur prior to the commencement of the sentencing hearing," though the Court retains discretion in particular circumstances. *United States v. Galvon-Manzo*, 642 F.3d 1260, 1267 & n.3 (10th Cir. 2011). The sentencing hearing commenced on September 15, 2026. If Hailey contends when sentencing resumes that he has since made a disclosure, the Court will decide then whether, in its discretion, to consider it. On the present record, Objection No. 5 is overruled.[75]

**G. Guideline calculation.**

The Court applies the Guidelines Manual in effect on the date of sentencing unless doing so would violate the Ex Post Facto Clause. U.S.S.G. § 1B1.11(a)–(b). The November 1, 2026, Manual will be in effect when Hailey is sentenced, and applying it does not produce a higher range than the November 2024 Manual, in effect when he committed the last of the offenses: the 2026 amendments renumber the minimal-participant and safety-valve provisions without changing their substance, and their restructuring of the multiple-count rules does not affect two cocaine counts that are combined under either Manual. See U.S.S.G. § 3D1.1(a); U.S.S.G. § 3D1.2(d) (2024).[76]

---

[75] The finding that Hailey qualifies for the reduction under § 3E1.1(a) does not decide this question. A defendant need not volunteer relevant conduct beyond the offense of conviction to qualify for that reduction, U.S.S.G. § 3E1.1 cmt. n.1(A), but § 5C1.2(a)(5) requires him to provide all information he has concerning the offense and the same course of conduct. See *Patron-Montano*, 223 F.3d at 1189–91.

[76] See Sentencing Guidelines for United States Courts, 91 Fed. Reg. 24,088, 24,088–89, 24,096–109 (May 4, 2026).

The special instruction in § 2D1.1(e)(2)(B), effective November 2025, can only benefit Hailey, and he does not qualify for an adjustment under either provision. See Part III.D.

Hailey is accountable for 515.5 grams of cocaine, so the base offense level is 24. U.S.S.G. § 2D1.1(c)(8). No firearm enhancement applies. No mitigating-role adjustment applies, so the adjusted offense level is 24. See Part III.D. Neither § 2D1.1(b)(16) nor (b)(17) applies. With the two-level reduction under § 3E1.1(a) and, if the government moves for it and the Court grants the motion, the additional one-level reduction under § 3E1.1(b), the offense level is 21, and with the undisputed two-level reduction under § 4C1.1, the total offense level is 19.[77] Hailey has no criminal-history points and is in Criminal History Category I.[78] The advisory imprisonment range is 30 to 37 months. Without the additional one-level reduction, the total offense level would be 20 and the range 33 to 41 months.

[77] Doc. 34 ¶¶ 44–53.
[78] Doc. 34 ¶¶ 55–67.

## IV. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's objections to the Presentence Investigation Report are resolved as follows: Objection No. 1 is **SUSTAINED IN PART** and **OVERRULED IN PART** as set out in Part III.A; Objection No. 2 is **SUSTAINED**; Objection No. 3 is **OVERRULED**; Objection No. 4 is **OVERRULED**; and Objection No. 5 is **OVERRULED** on the present record, subject to Part III.F. Defendant qualifies for the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). On the present record, if the government moves for the additional one-level reduction under § 3E1.1(b) and the Court grants the motion, Defendant's total offense level is 19, his criminal history category is I, and his advisory imprisonment range is 30 to 37 months.

**IT IS FURTHER ORDERED** that the United States Probation Office shall attach a copy of this Order to the Presentence Investigation Report, including any copy made available to the Bureau of Prisons. Fed. R. Crim. P. 32(i)(3)(C).

**IT IS SO ORDERED.**

Dated this 4th day of November, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge